IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| LEO L. PITTMAN-BEY | § | |
|     TDCJ-CID #718254 | § | |
| v. | § | C.A. NO. V-10-086 |
| | § | |
| DIANA CLAY, ET AL. | § | |

## OPINION AND ORDER DISMISSING CERTAIN CLAIMS AND RETAINING CASE

This civil rights action was filed by a state prisoner pursuant to 42 U.S.C. § 1983.

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 10 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee, or proceeds as a pauper.  Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam) (citations omitted).  Plaintiff's pro se complaint must be read indulgently, see Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible.  Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

Applying these standards, the Court retains plaintiff's claims against Chaplain Casey Celum and Imam Omar Shakir alleging violations of his First Amendment right to practice his religion, as well as violations under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, and service shall be ordered on these defendants.  Plaintiff's claims against the remaining defendants are dismissed for failure to state a claim or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

I.  **JURISDICTION**

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.  Upon consent of the plaintiff, (D.E. 5), this case was referred to a magistrate judge to conduct all further proceedings, including entry of final judgment.  (D.E. 8); see also 28 U.S.C. § 636(c).

II.  **FACTUAL ALLEGATIONS**

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), and he is currently incarcerated at the Stevenson Unit in Cuero, Texas.  He filed his original complaint on November 8, 2010, and named the following individuals as defendants: Warden Kenneth Bright; Assistant Warden Diana K. Clay; Chaplain Casey W. Celum; Imam Omar Shakir; and Bill Pierce, Chaplaincy Coordinator.  (D.E. 1).

A Spears[1] hearing was conducted on December 15, 2011.  The following allegations were made in plaintiff's original complaint,[2] or at the hearing:

Plaintiff is Muslim, and more specifically, a member of the Hanafi school of Sunni Islam. According to plaintiff, under Hanafi school doctrine, an incarcerated member should not attend Jumah (Friday prayer) while in prison because it is viewed as a violation of God's law. However, pursuant to TDCJ rules and regulations, an inmate cannot receive an "after sunset meal" during the holy month of Ramadan unless he has consistently attended Friday prayer

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

[2] Plaintiff was twice denied leave to file an amended complaint, (D.E. 12, 13, 17, 18); however, certain exhibits filed with his proposed December 1, 2011 amended complaint, (D.E. 12), were discussed at the evidentiary hearing, and are considered for purposes of this Order.

services.[3] In 2009, 2010, and 2011, because plaintiff did not attend Jumah, he was denied participation in the Ramadan meals.

Plaintiff has repeatedly attempted to explain to defendants that his decision to not attend Jumah should not adversely affect his ability to participate in Ramadan meals. In 2009, he talked to Chaplain Celum, and he also filed I-60s, but Chaplain Celum never responded to plaintiff's written inquiries, and denied having received any I-60 requests.

On January 10, 2010, plaintiff filed a Step 1 grievance, Number 2010077979, complaining that he had informally spoken to Chaplain Celum about receiving an after sunset meal, but was never placed on the Ramadan meal list. (D.E. 1 at 6-7). On January 13, 2010, Warden Clay responded:

> According to TDCJ Policy 06.03 (rev. 4), page 2 of 4, Roman Numeral VI, an offender must send the Chaplain an I-60 request within 14 days requesting access to a religious holy day such as Ramadan. Per records, Chaplain Celum did not receive an I-60 from you for this particular "meal" or for the Ramadan Service. No further action warranted.

Id. at 7.

On January 16, 2010, plaintiff filed a Step 2 grievance stating that he had in fact requested participation in the Ramadan fast and after sunset meals, and that he had written copies of his requests directed to Chaplain Celum. Id. at 4-5. He explained that he wanted to attend Ramadan in the future "despite of the fact that Jumah in prison is not an obligation but fasting is...." Id. at 4. On February 23, 2010, Bill Pierce denied plaintiff's Step 2 grievance stating that

---

[3] Ramadan begins and ends on different dates each year because those dates are decided by the Islamic calendar, which is eleven days shorter than the Gregorian calendar. See http://www.islamicfinder.org/Hcal/index.php.

3

the Step 1 response was appropriate.  Id. at 5.

On August 12, 2010, plaintiff filed a Step 1 grievance, Number 2010214950, complaining that TDCJ's policy requiring him to attend Jumah services in order to receive a sunset meal during Ramadan was unconstitutional.  Id. at 8-9.  He complained that the Jumah services were not led by a licensed or ordained chaplain, Imam, or volunteer, but by another inmate, and that this policy unconstitutionally required him to submit to the authority of another inmate.  Id. at 8.  He emphasized that there was no issue as to whether he was a practicing Muslim as his TDCJ travel card for 15 years has identified him as such.  Id.

On August 27, 2010, Warden Clay denied plaintiff's Step 1 grievance, again citing to TDCJ Chaplain Policy 06.03, and indicating that he had not filed a request to attend services 14 days prior to Ramadan, and also, that he had failed to attend Jumah services regularly for 60 days prior to Ramadan.  Id. at 9.  In addition, Warden Clay overruled plaintiff's objection to prisoner-led Jumah services, writing:

> A Federal Court Order states Jumah Services will be facilitated by Muslim Offenders.  TDCJ provides Jumah Services with a Muslim Offender Coordinator/Assistant Coordinator who has demonstrated leadership qualities, knowledge and capabilities needed to articulate and exemplify Islamic teachings within the Muslim community.

Id.

On September 1, 2010, plaintiff filed a Step 2 grievance, Number 2010214950, claiming: (1) he had proof that, fourteen-days before Ramadan, he had requested participation in the 2010 Ramadan after sunset meals; (2) TDCJ policy authorizing inmate-lead services was unconstitutional and in violation of the holding in Ruiz which states that no prisoner may have authority over another prisoner; and (3) the TDCJ policy violated his right to practice his

religion. Id. at 10-11. On October 8, 2010, the Regional Office denied plaintiff's Step 2 appeal, noting that Chaplain Celum concluded that he had never received an I-60 from plaintiff to participate in Ramadan services and that his failure to attend Jumah rendered him ineligible to attend Ramadan meals. Id. at 11.

On August 1, 2011, plaintiff filed an I-60 request directed to the kitchen captain indicating that, per Chaplain Celum, he was to receive a "johnny sack" meal after sunset during Ramadan, and inquiring as to the "nutritional value" of this meal. (D.E. 12, at 28). The response to this I-60 indicates that plaintiff was receiving the "Diet For Health" as per TDCJ policy. Id.

On August 7, 2011, plaintiff filed a Step 1 grievance, Number 2011211225, complaining that the cold "johnny" sack meals violated the significance of Ramadan, and also, that he could not eat the johnny sacks delivered to his cell because they were delivered by non-Muslims, and also by homosexuals. Id. at 12-13. On August 16, 2011, Warden Peralta denied this grievance. Id. at 13.

On August 19, 2011, plaintiff filed a Step 2 grievance, Number 2011211225, alleging that he was being discriminated against by not receiving a Ramadan meal. Id. at 14-15. On September 22, 2011, the Regional Office denied the appeal because plaintiff had not properly raised his complaints to the Chaplain, and also, that there was no evidence to support his claims. Id. at 15.

On September 1, 2011, plaintiff filed a Step 1 grievance, Number 2012001258, alleging that Chaplain Celum had discriminated against him by not allowing him to participate in Eid prayer and festivities. Id. at 17-18. On September 9, 2011, Warden Peralta denied this grievance:

5

> The TDCJ Chaplaincy Manual addressing Eid UI Fitr Festival Eligible Muslim Offenders states, "Eligible refers to those Muslim offenders that participated in the Muslim Community Ramadan activities scheduled in the Education Building from August 1, 2011 thru August 30, 2011, or have sent Chaplain an I-60. You did not participate in any Ramadan activities nor did you send the Chaplain an I-60 requesting any participation in the Eid UI Fitr Festivities. There is no evidence of not being treated equally. No further action warranted.

Id. at 18.

On September 11, 2011, plaintiff filed a Step 2 grievance, Number 2012001258, asserting that he had submitted an I-60 to the chaplain, and he also offered proof of the johnny sack meals he had received during Ramadan. Id. at 19-20. On September 22, 2011, Bill Pierce denied the appeal stating that his complaint had been adequately investigated and answered, and that no further action was warranted. Id. at 20.

Through this lawsuit, plaintiff seeks declaratory and injunctive relief requiring the TDCJ to provide him with after sunset meals during Ramadan, and "monetary damages for missed meals." (D.E. 1, at 12).

### III. DISCUSSION

**A.     The Legal Standard For Screening Inmate Civil Rights Actions.**

Plaintiff's action may be dismissed for failure to state a claim upon which relief can be granted despite his failure to exhaust administrative remedies. 42 U.S.C. § 1997e(c)(2). It is well established that "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir.

1995) (per curiam). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted). The complaint must be liberally construed in favor of the prisoner, and the truth of all pleaded facts must be assumed. Id. (citation omitted).

**B.      Plaintiff's Claims Against Defendants In Their Official Capacity Are Dismissed.**

Plaintiff did not state in what capacity he is suing the named defendants, so it is analyzed as if he is suing the defendants in both their individual and official capacities.

The Eleventh Amendment bars claims against a state filed pursuant to § 1983. Aguilar v. Texas Dep't of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Servs., 925 F.2d 866, 875 n.9 (5th Cir. 1991)). "Section 1983 does not waive the state's sovereign immunity." Id. (citing Quern v. Jordan, 440 U.S. 332, 338 n.7 (1979)). "Texas has not consented to this suit." Id. (citing Emory v. Texas State Bd. of Med. Exam'rs, 748 F.2d 1023, 1025 (5th Cir. 1984)). A suit against a state official in his or her official capacity is a suit against the official's office, and consequently, "it is no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (citations omitted).

To the extent plaintiff is suing a defendant in his individual capacity for money damages, those claims are effectively, claims against the State of Texas, and as such, are barred by the Eleventh Amendment. Accordingly, plaintiff's claims for money damages against defendants in their official capacities are dismissed with prejudice as barred.

**C.     Plaintiff Failed To State A Claim Against Defendants Bright And Clay.**

Plaintiff has sued Warden Bright and Assistant Warden Clay alleging that these defendants violated his right to practice his religion by virtue of their positions as wardens at the Stevenson Unit. He claims that, as supervising officials at the unit, they are ultimately "in charge of" and responsible for the persons and activities that occur there.

It is well established that "personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) (1983) (citation omitted); see also Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976) (requiring affirmative link between injury and conduct of defendant). A plaintiff cannot obtain damages or injunctive relief from a policy-maker or supervisor solely on a theory of *respondeat superior*. See Monell v. Department of Social Servs., 436 U.S. 658, 691-95 (1978) (supervisory officials cannot be held vicariously liable under § 1983 for their subordinate's actions); Beattie v. Madison County Sch. Dist., 254 F.3d 595, 600 n.2 (5th Cir. 2001). Supervisory officials may be held liable only if they affirmatively participate in acts that cause the constitutional deprivation or if they implement unconstitutional policies that causally result in plaintiff's injury. Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987).

Plaintiff fails to allege any facts to suggest that Warden Bright or Warden Clay were directly involved in any decision related to his ability to participate in the Ramadan meal or to otherwise practice his religion. Indeed, he testified that he never spoke to Warden Bright or Warden Clay in person regarding his problems in obtaining a Ramadan meal. Nor does he claim that they personally participated in any violation of his rights or implemented an unconstitutional policy. Moreover, no evidence was offered to suggest that, in their supervisory roles, either of

8

these defendants were involved in approving or denying Ramadan meals to plaintiff. There are no facts to suggest that Warden Bright or Warden Clay personally hindered plaintiff's ability to practice his religion, and as such, these defendants cannot be held liable under § 1983.

To the extent plaintiff is attempting to hold Warden Bright or Warden Clay liable on the grounds that they denied his grievances in which he complained about TDCJ policy or Chaplain Celum, these allegations fail to state a constitutional violation. See Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected interest in having their grievances investigated or resolved in their favor). Thus, plaintiff fails to state a cognizable claim against Warden Bright or Warden Clay, and his claims against these defendants are dismissed with prejudice.

**D.     Plaintiff Failed To State A Claim Against Defendant Pierce.**

Similarly, plaintiff has named Bill Pierce, the Region IV Chaplaincy Director, as a defendant because he denied two of his Step 2 appeals. (D.E. 1, at 5; D.E. 12, at 20). However, plaintiff testified that he never spoke to Mr. Pierce directly or in person, and he does not allege that Mr. Pierce was personally involved in any unconstitutional conduct. Instead, his only claim against Mr. Pierce is that he denied his grievances complaining about his treatment during Ramadan at the Stevenson Unit. This allegation cannot support a claim of § 1983 liability. Geiger, 404 F.3d at 374. Accordingly, plaintiff's claim against defendant Pierce is dismissed.

**E.     Plaintiff's First Amendment Claims Are Retained.**

Plaintiff contends that Chaplain Celum has repeatedly violated his First Amendment right to practice his religion over the past three years by refusing to acknowledge his I-60 requests that he be included on the list of inmates eligible for participation in Ramadan, and by refusing his

participation in Ramadan, despite the fact that plaintiff's travel card identifies his religion as Muslim and plaintiff has consistently held himself out as such. He further claims that Imam Shakir has violated his First Amendment rights by failing to provide a trained volunteer or instructor to conduct Jumah services rather than an inmate, and by failing to intervene and assist him in securing a place on the Ramadan list.

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof. U.S. Const., amend. I. The Supreme Court has held that prisoners retain their First Amendment right, including the right to free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citations omitted). However, that right may be limited by legitimate penological objectives. Id. (citations omitted); Hicks v. Garner, 69 F.3d 22, 25 (5th Cir. 1995) (citation omitted). The O'Lone Court reiterated that "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 349 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

The Fifth Circuit has held that a prisoner complaining about the denial of *one* meal during Ramadan fails to state a constitutional violation. Johnson v. Johnson, 244 F.3d 135, 2000 WL 1901538, at *1 (5th Cir. Dec. 13, 2000) (per curiam) (unpublished). However, plaintiff's claims concern the entire month of Ramadan over the past three years, and clearly implicate his rights under the First Amendment. See Thompson v. Solomon, 995 F.2d 221, 1993 WL 209926, at *2 (5th Cir. June 2, 1993) (per curiam) (unpublished) (reversing frivolous dismissal of inmate's claim regarding the failure to accommodate Ramadan fasting); Brown v. Groom, 174 F. App'x 847, 848-49 (5th Cir. 2006) (per curiam) (unpublished) (prison officials were not entitled

to qualified immunity, in connection with a claim regarding attendance at Ramadan services and fasting). The fact that plaintiff received johnny sacks during Ramadan does not necessarily resolve his claim. See Makin v. Colorado Dep't of Corr., 183 F.3d 1205, 1211 (10th Cir. 1999) (emphasizing the importance of the *quality* of the plaintiff's personal religious experience during Ramadan as permitted by the prison).

In this case, in order to participate in Ramadan meals, plaintiff would be forced to attend Jumah services against his beliefs that he not attend Jumah while incarcerated. The defendants' implementation of this policy and their refusal to make special arrangements for plaintiff place a burden on his ability to practice his religion. Thus, plaintiff has stated a claim under the First Amendment against Chaplain Celum and Imam Shakir, and these claims will be retained.

**F.    Plaintiff's RLUIPA Claims Are Retained.**

At the evidentiary hearing, plaintiff orally moved to amend his complaint to raise claims pursuant to RLUIPA, and he was granted leave to do so.

The Supreme Court has explained that RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005) (citations omitted). "RLUIPA imposes a higher burden than does the First Amendment in that the statute requires prison regulators to put forth a stronger justification for regulations that impinge on the religious practices of inmates." Mayfield v. Texas Dep't of Criminal Justice, 529 F.3d 599, 612 (5th Cir. 2008). Pursuant to RLUIPA, a government is prohibited from imposing a substantial burden on a prisoner's exercise of religious freedom unless there is a compelling interest and the burden is the least

restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1. In order to make a RLUIPA claim, a prisoner must initially show that the prison's regulations imposed a substantial burden on his exercise of religious activity. Adkins v. Kaspar, 393 F.3d 559, 567 (5th Cir. 2004). If a plaintiff meets his burden of proof, the burden shifts to the government to "demonstrate that its action was supported by a compelling interest and that the regulation is the least restrictive means of carrying out that interest." Mayfield, 529 F.3d at 613 (citing 42 U.S.C. § 2000cc-2(b)).

For purposes of § 1915A screening, plaintiff has alleged sufficient facts that, if true, state a RLUIPA claim. He contends that, by following his religious belief that he not attend Jumah while in prison, he is then denied the opportunity to participate in the Ramadan meal, an essential part of the Ramadan experience. He claims that defendants Chaplain Celum and Imam Shakir are both aware of this burden on the exercise of his religion, but have failed to accommodate him, despite having the authority to do so. Accordingly, plaintiff has stated RLUIPA claims against these defendants, and those claims are retained, and service ordered on them.

## IV.  CONCLUSION

For the reasons stated herein, plaintiff's claims for money damages against defendants in there official capacities are dismissed as barred by the Eleventh Amendment.  Plaintiff's claims against defendants Warden Bright, Assistant Warden Clay, and Bill Pierce are dismissed for failure to state a claim.  Plaintiff's First Amendment and RLUIPA claims against Chaplain Celum and Imam Shakir are retained, and service shall be ordered on these individuals.

ORDERED this 22nd day of December 2011.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE