IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| LEO L. PITTMAN-BEY | § | |
|     TDCJ-CID #718254 | § | |
| v. | § | C.A. NO. V-10-086 |
| | § | |
| DIANA CLAY, ET AL. | § | |

## OPINION DENYING PLAINTIFF'S MOTION TO RECONSIDER

This is a civil rights action filed by a state prisoner pursuant to 42 U.S.C. § 1983. Pending is Plaintiff's pro se objection to the Opinion And Order Dismissing Certain Claims And Retaining Case which is construed as a motion to reconsider the dismissal of his claims. (D.E. 24); see also Pittman-Bey v. Clay, No. V-10-086, 2011 WL 6749027 (S.D. Tex. Dec. 22, 2011) (unpublished). For the reasons discussed below, his motion is denied.

### I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Upon consent of the plaintiff, (D.E. 5), this case was referred to a magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 8); see also 28 U.S.C. § 636(c).

### II. FACTUAL ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), and he is currently incarcerated at the Stevenson Unit in Cuero, Texas. He filed his original complaint on November 8, 2010, and named the following individuals as defendants: Warden Kenneth Bright; Assistant Warden Diana K. Clay; Chaplain Casey W. Celum; Imam Omar Shakir; and Bill Pierce, Chaplaincy Coordinator. (D.E. 1).

A Spears[1] hearing was conducted on December 15, 2011.  The following allegations were made in plaintiff's original complaint,[2] or at the hearing:

Plaintiff is Muslim, and more specifically, a member of the Hanafi school of Sunni Islam. According to plaintiff, under Hanafi school doctrine, an incarcerated member should not attend Jumah (Friday prayer) while in prison because it is viewed as a violation of God's law. However, pursuant to TDCJ rules and regulations, an inmate cannot receive an "after sunset meal" during the holy month of Ramadan unless he has consistently attended Friday prayer services.[3]  In 2009, 2010, and 2011, because plaintiff did not attend Jumah, he was denied participation in the Ramadan meals.

Plaintiff has repeatedly attempted to explain to defendants that his decision to not attend Jumah should not adversely affect his ability to participate in Ramadan meals.  In 2009, he talked to Chaplain Celum, and he also filed I-60s, but Chaplain Celum never responded to plaintiff's written inquiries, and denied having received any I-60 requests.

On January 10, 2010, plaintiff filed a Step 1 grievance, Number 2010077979, complaining that he had informally spoken to Chaplain Celum about receiving an after sunset meal, but was never placed on the Ramadan meal list.  (D.E. 1 at 6-7).  On January 13, 2010, Warden Clay responded:

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

[2] Plaintiff was twice denied leave to file an amended complaint, (D.E. 12, 13, 17, 18); however, certain exhibits filed with his proposed December 1, 2011 amended complaint, (D.E. 12), were discussed at the evidentiary hearing, and are considered for purposes of this Order.

[3] Ramadan begins and ends on different dates each year because those dates are decided by the Islamic calendar, which is eleven days shorter than the Gregorian calendar.  See http://www.islamicfinder.org/Hcal/index.php.

> According to TDCJ Policy 06.03 (rev. 4), page 2 of 4, Roman Numeral VI, an offender must send the Chaplain an I-60 request within 14 days requesting access to a religious holy day such as Ramadan. Per records, Chaplain Celum did not receive an I-60 from you for this particular "meal" or for the Ramadan Service. No further action warranted.

Id. at 7.

On January 16, 2010, plaintiff filed a Step 2 grievance stating that he had in fact requested participation in the Ramadan fast and after sunset meals, and that he had written copies of his requests directed to Chaplain Celum. Id. at 4-5. He explained that he wanted to attend Ramadan in the future "despite of the fact that Jumah in prison is not an obligation but fasting is...." Id. at 4. On February 23, 2010, Bill Pierce denied plaintiff's Step 2 grievance stating that the Step 1 response was appropriate. Id. at 5.

On August 12, 2010, plaintiff filed a Step 1 grievance, Number 2010214950, complaining that TDCJ's policy requiring him to attend Jumah services in order to receive a sunset meal during Ramadan was unconstitutional. Id. at 8-9. He complained that the Jumah services were not led by a licensed or ordained chaplain, Imam, or volunteer, but by another inmate, and that this policy unconstitutionally required him to submit to the authority of another inmate. Id. at 8. He emphasized that there was no issue as to whether he was a practicing Muslim as his TDCJ travel card for 15 years has identified him as such. Id.

On August 27, 2010, Warden Clay denied plaintiff's Step 1 grievance, again citing to TDCJ Chaplain Policy 06.03, and indicating that he had not filed a request to attend services 14 days prior to Ramadan, and also, that he had failed to attend Jumah services regularly for 60 days prior to Ramadan. Id. at 9. In addition, Warden Clay overruled plaintiff's objection to prisoner-led Jumah services, writing:

3

> A Federal Court Order states Jumah Services will be facilitated by Muslim Offenders. TDCJ provides Jumah Services with a Muslim Offender Coordinator/Assistant Coordinator who has demonstrated leadership qualities, knowledge and capabilities needed to articulate and exemplify Islamic teachings within the Muslim community.

Id.

On September 1, 2010, plaintiff filed a Step 2 grievance, Number 2010214950, claiming: (1) he had proof that, fourteen-days before Ramadan, he had requested participation in the 2010 Ramadan after sunset meals; (2) TDCJ policy authorizing inmate-lead services was unconstitutional and in violation of the holding in Ruiz which states that no prisoner may have authority over another prisoner; and (3) the TDCJ policy violated his right to practice his religion. Id. at 10-11. On October 8, 2010, the Regional Office denied plaintiff's Step 2 appeal, noting that Chaplain Celum concluded that he had never received an I-60 from plaintiff to participate in Ramadan services and that his failure to attend Jumah rendered him ineligible to attend Ramadan meals. Id. at 11.

On August 1, 2011, plaintiff filed an I-60 request directed to the kitchen captain indicating that, per Chaplain Celum, he was to receive a "johnny sack" meal after sunset during Ramadan, and inquiring as to the "nutritional value" of this meal. (D.E. 12, at 28). The response to this I-60 indicates that plaintiff was receiving the "Diet For Health" as per TDCJ policy. Id.

On August 7, 2011, plaintiff filed a Step 1 grievance, Number 2011211225, complaining that the cold "johnny" sack meals violated the significance of Ramadan, and also, that he could not eat the johnny sacks delivered to his cell because they were delivered by non-Muslims, and also by homosexuals. Id. at 12-13. On August 16, 2011, Warden Peralta denied this grievance. Id. at 13.

On August 19, 2011, plaintiff filed a Step 2 grievance, Number 2011211225, alleging that he was being discriminated against by not receiving a Ramadan meal. Id. at 14-15. On September 22, 2011, the Regional Office denied the appeal because plaintiff had not properly raised his complaints to the Chaplain, and also, that there was no evidence to support his claims. Id. at 15.

On September 1, 2011, plaintiff filed a Step 1 grievance, Number 2012001258, alleging that Chaplain Celum had discriminated against him by not allowing him to participate in Eid prayer and festivities. Id. at 17-18. On September 9, 2011, Warden Peralta denied this grievance:

> The TDCJ Chaplaincy Manual addressing Eid UI Fitr Festival Eligible Muslim Offenders states, "Eligible refers to those Muslim offenders that participated in the Muslim Community Ramadan activities scheduled in the Education Building from August 1, 2011 thru August 30, 2011, or have sent Chaplain an I-60. You did not participate in any Ramadan activities nor did you send the Chaplain an I-60 requesting any participation in the Eid UI Fitr Festivities. There is no evidence of not being treated equally. No further action warranted.

Id. at 18.

On September 11, 2011, plaintiff filed a Step 2 grievance, Number 2012001258, asserting that he had submitted an I-60 to the chaplain, and he also offered proof of the johnny sack meals he had received during Ramadan. Id. at 19-20. On September 22, 2011, Bill Pierce denied the appeal stating that his complaint had been adequately investigated and answered, and that no further action was warranted. Id. at 20.

Through this lawsuit, plaintiff seeks declaratory and injunctive relief requiring the TDCJ to provide him with after sunset meals during Ramadan, and "monetary damages for missed

meals." (D.E. 1, at 12).

## III. DISCUSSION

**A.     Plaintiff's Motion Is Timely.**

A motion to reconsider is timely "filed no later than 28 days after entry of the judgment." Fed. R. Civ. P. 59(e).  Plaintiff's motions for injunctive relief were dismissed on December 22, 2011.  See generally Pittman-Bey, 2011 WL 6749027.  His motion for reconsideration was filed on December 28, 2011 and thus was timely filed.

**B.     Legal Standard For Relief Pursuant To Rule 59.**

Rule 59(e) motions "serve the narrow purpose of allowing a party 'to correct manifest errors of law or fact or to present newly discovered evidence.'"  Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir. 1989) (citations omitted); accord Kossie v. Crain, 602 F. Supp. 2d 786, 793 (S.D. Tex. 2009) (citation omitted).  Rule 59(e) cannot be used to introduce evidence that was available prior to the entry of judgment, nor should it be employed to relitigate old issues, advance new theories, or secure a rehearing on the merits.  Templet v. HydroChem Inc., 367 F.3d 473, 478-79 (5th Cir. 2004) (citation omitted); accord Kossie, 602 F. Supp. 2d at 793 (citation omitted).  To prevail on a Rule 59(e) motion, the moving party must demonstrate the existence of the need to correct a clear error of law, or present newly discovered evidence. Templet, 367 F.3d at 479; accord Kossie, 602 F. Supp. 2d at 793.

**C.     Plaintiff's Motion To Reconsider The Claims Against Defendants In Their Official Capacity Is Denied.**

In the pending motion, plaintiff requests that the order dismissing his claims against defendants in their official capacity be vacated and the claims reinstated. (D.E. 24, at 3). He argues, without citing any support for the proposition, that defendants are not entitled to qualified immunity for the RLUIPA claims. Id. It is unclear how this is related to whether a claim against defendants in their official capacity should proceed.

Plaintiff also makes an argument concerning official capacity claims related to defendants actions being made "under color of law:"

> In this case, it can not be said, that defendants were **Not** acting under color of law while in the proformance [sic] of their lawful duties as, either **Prison Officials**, in each Official Capacity as listed in the plaintiff's filing. It is uncontroverted that the Plaintiff clearly intended to pursue his claims against all defendant's in their **Official Capacity** mainly because any and all contact made with any of the defendant's would only **Occur** between the Plaintiff and the Defendant's [sic] while they were **Work** [sic] as State employee, therefore all would be **Acting Under Color of Law**.

Id. (emphases in original). Any § 1983 claim requires that the defendant's actions be under color of law, but plaintiff is confusing that requirement with whether or not a defendant is sued in their official or individual capacities.

The Eleventh Amendment bars claims against a state filed pursuant to § 1983. Aguilar v. Texas Dep't of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Servs., 925 F.2d 866, 875 n.9 (5th Cir. 1991)). "Section 1983 does not waive the state's sovereign immunity." Id. (citing Quern v. Jordan, 440 U.S. 332, 338 n.7 (1979)). "Texas has not consented to this suit." Id. (citing Emory

v. Texas State Bd. of Med. Exam'rs, 748 F.2d 1023, 1025 (5th Cir. 1984)).  A suit against a state official in his or her official capacity is a suit against the official's office, and consequently, "it is no different from a suit against the State itself."  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (citations omitted).

Any claims for monetary damages against defendants must be brought against each defendant in their individual capacity.  Any claims against defendants in their official capacity is essentially a lawsuit against the State of Texas, which has not waived its sovereign immunity.  Accordingly, plaintiff's motion to reconsider the denial of his claims against defendants in their official capacities is denied.

**D.     Plaintiff's Motion To Reconsider The Dismissal Of His Claims Against Defendants Bright And Clay Is Denied.**

In the pending motion, plaintiff argues that the dismissal of Warden Bright and Assistant Warden Clay was incorrect and that his claims against them be reinstated.  (D.E. 24, at 4). Regarding his claims against Warden Clay, he argued that she "was personally involved as the Plaintiff himself, Talked to Warden Clay at the Searcher's desk on Stevenson Unit about the Chaplain's Position relating to the Ramadan concerns, and the Asst Warden told the Plaintiff that she "Warden Clay" supports whatever he "Chaplain Celem" says."  Id.

At the December 15, 2011 hearing, plaintiff indicated that he did not send I-60s to either warden.  Moreover, he acknowledged that there was no evidence that either warden was involved in any TDCJ policy decisions regarding Ramadan meals.  His complaint and amended complaint do not provide evidence of any constitutional violations by Warden Bright and Warden Clay.  Instead, he simply asserts that they both "denied him an after sunset meal during Ramadan."  (D.E. 1, at 3); see also (D.E. 12).  He also filed various grievances and I-60s that do

not discuss Warden Bright. (D.E. 2, at 14-22; D.E. 12, at 12-20, 25-30). The only mention of Warden Clay in the grievances are those filed by another inmate against Chaplain Celum and another inmate. (D.E. 2, at 14-17). Warden Clay denied the Step 1 grievance. Id. at 17. In the Step 2 grievance, the inmate then claimed that she did not understand the claims raised in the initial grievance. Id. at 14.

At the December 15, 2011 hearing, regarding Warden Bright, plaintiff was asked, "Have you ever had a conversation with Warden Bright regarding this denial of meals to break the fast?" to which he responded "No sir." Next, he was asked, "Why are you suing Warden Bright then?" Plaintiff answered, "He's warden over the unit your Honor. And my thinking was that they have to run whatever issues that are happening here on the unit by him because he's the head warden. So he would have the authority to eliminate whatever problem there is if he wanted to get involved."

Regarding Warden Clay, plaintiff testified at the hearing that in 2009 he spoke with Warden Clay once in passing about his complaint against Chaplain Celum. He does not provide any details, but simply asserts that she told him she supports whatever Chaplain Celum says.

It is well established that "personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) (1983) (citation omitted); see also Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976) (requiring affirmative link between injury and conduct of defendant). A plaintiff cannot obtain damages or injunctive relief from a policy-maker or supervisor solely on a theory of *respondeat superior*. See Monell v. Department of Social Servs., 436 U.S. 658, 691-95 (1978) (supervisory officials cannot be held vicariously liable under § 1983 for their subordinate's actions); Beattie v. Madison County Sch.

9

Dist., 254 F.3d 595, 600 n.2 (5th Cir. 2001).  Supervisory officials may be held liable only if they affirmatively participate in acts that cause the constitutional deprivation or if they implement unconstitutional policies that causally result in plaintiff's injury.  Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987).

Plaintiff fails to allege any facts to suggest that Warden Bright or Warden Clay were directly involved in any decision related to his ability to participate in the Ramadan meal or to otherwise practice his religion.  Indeed, he testified that he never spoke to Warden Bright in person regarding his problems in obtaining a Ramadan meal.  Moreover, he only mentioned the matter to Warden Clay once in passing and complains because she did nothing.  No evidence was offered to suggest that, in their supervisory roles, either of these defendants were involved in approving or denying Ramadan meals to plaintiff.  There are no facts to suggest that Warden Bright or Warden Clay personally hindered plaintiff's ability to practice his religion.  Accordingly, plaintiff's motion to reconsider the dismissal of his claims against these two defendants is denied.

In the pending motion, plaintiff also asserts that "both the Unit's Warden, and Assistance Warden personally read and responded to written **Grievances** filed by the plaintiff which made them personally aware of the facts in this Case."  (D.E. 24, at 5) (emphasis in original).  To the extent plaintiff is attempting to hold Warden Bright or Warden Clay liable on the grounds that they denied grievances complaining about TDCJ policy or Chaplain Celum, these allegations fail to state a constitutional violation.  See Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected interest in having their grievances investigated or resolved in their favor).  Thus, plaintiff's motion to reconsider the dismissal of his claims against

Warden Bright or Warden Clay related to their investigation of his grievances against Chaplain Celum is denied.

**E.     Plaintiff's Request For Dismissal Without Prejudice Is Denied.**

In the pending motion, plaintiff argues that because he paid the $350 filing fee in full and his action was reinstated that his claims should be dismissed without prejudice subject to refiling after the correcting of any errors. (D.E. 24, at 5). Originally, on August 9, 2011, his action was dismissed because he is a three-strikes litigant. (D.E. 9, at 1) (discussing 28 U.S.C. § 1915(g)). That dismissal was without prejudice and he could have his action reinstated if he paid the filing fee in full with a motion to reinstate. Id. at 3. On December 5, 2011, the filing fee was paid in full and he filed a motion to reinstate his action. (D.E. 14). On December 7, 2011, the motion to reinstate was granted. (D.E. 15).

Congress has mandated that all prisoner civil litigation against government officials or entities be screened. See 28 U.S.C. § 1915A(a). Thus, plaintiff's claims were screened and the fact that he paid the filing fee in full is irrelevant to that screening. He cannot proceed on his claims against defendants in their official capacity and has failed to state a claim against Warden Bright and Warden Clay. Dismissal without prejudice is inappropriate and unwarranted.

11

## IV. **CONCLUSION**

For the reasons stated herein, plaintiff's motion to reconsider the dismissal of his claims, (D.E. 24), is DENIED.

ORDERED this 20th day of January 2012.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE