UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| LEO L. PITTMAN-BEY, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 6:10-CV-86 |
| § | |
| DIANA CLAY, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Plaintiff Leo Pittman-Bey, a Muslim inmate in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ"), has brought this *pro se* suit alleging that Defendants violated the Religious Land Use and Institutionalized Persons Act and his constitutional right to free exercise of religion by denying him after-sunset meals during the Islamic holy month of Ramadan. During the relevant time period, TDCJ regulations allowed practicing Muslim inmates to receive after-sunset meals during Ramadan, but only if they had attended Jumu'ah (weekly Friday prayer) services in the 60 days prior to Ramadan or had received a special exception from the Muslim chaplain. Pittman-Bey did not attend the services because, as a member of the Hanafi School of Sunni Islam, he believes that Jumu'ah services are not proper if conducted in nonpublic settings like prisons. Since

1

the filing of this lawsuit, TDCJ has changed its regulations to exclude the Jumu'ah attendance requirement.

While that change in prison policy moots Pittman-Bey's request for injunctive relief, the Court must still rule on his constitutional claim seeking damages for the years he was denied Ramadan meals based on his failure to meet the attendance requirement. The Court determines, however, that it need not decide whether the Free Exercise Clause gave Pittman-Bey the right to after-sunset meals in that situation because the Defendants have a valid qualified immunity defense. Accordingly, Defendants' motion for summary judgment is **GRANTED** and Pittman-Bey's motion is **DENIED.**

### I. BACKGROUND

These motions come before the Court on a Memorandum and Recommendation from the magistrate court. The Court therefore only briefly recounts Pittman-Bey's allegations, which are presented at more length in the Memorandum and Recommendation.

Pittman-Bey, an inmate in the Stevenson Unit in Cuero, filed this suit in November 2010 against Casey Celum, the unit chaplain; Omar Shakir, TDCJ's Regional Muslim Chaplain; and against several other prison officials previously dismissed from the case. Pittman-Bey is a follower of the Hanafi School of Sunni Islam; according to Pittman-Bey, Hanafi

2

doctrine holds that Jumu'ah services are invalid if performed in prison and thus are a violation of God's law.[1]  *See* Docket Entry No. 2 ¶ 14.  He thus refuses to attend Jumu'ah in prison but maintains that, as a practicing Muslim, he is still required to fast during the Islamic holy month of Ramadan.  The TDCJ allows practicing Muslim inmates to receive a special after-sunset meal during Ramadan; however, under the TDCJ regulations in force prior to Ramadan of 2012, it restricted those meals to inmates who had attended Jumu'ah services in the 60-day period prior to Ramadan or who had received a special exception from the Muslim chaplain.

Between 2009 and 2011, Pittman-Bey refused to attend Jumu'ah in accordance with his Hanafi beliefs, and Defendants denied him an exception to the Jumu'ah attendance policy.  He was thus ineligible to receive after-sunset meals during Ramadan in those years.  Accordingly, he was denied the special Ramadan meals during 2009 and 2010, although he did receive cold sack lunches during Ramadan of 2011 that he was allowed to eat in his cell after sunset.  The TDCJ formally changed its Jumu'ah attendance policy

---

[1] There are four *madhhabs*, or schools of legal thought, that are prevalent in Sunni Islam, of which the Hanafi *madhhab*—adhered to by roughly one-third of Muslims worldwide—is the largest.  *Hanafi School of Law*, THE OXFORD DICTIONARY OF ISLAM (John Esposito ed. 2004), *available at* http://www.oxfordislamicstudies.com/article/opr/t125/e798 (last visited Feb. 12, 2013).  A simple Google search of the phrase "Jumu'ah in prison" reveals a number of theological websites agreeing with Pittman-Bey that, under Hanafi doctrine, Jumu'ah services must be open to the public and thus are invalid if conducted in closed environments such as prisons.

3

prior to Ramadan of 2012 to allow participation by all Muslim inmates who submit a written request at least fourteen days in advance of Ramadan. Pursuant to the new policy, Pittman-Bey received the special Ramadan meals in 2012.

## II.     THE MEMORANDUM AND RECOMMENDATION

In September 2012, the magistrate judge submitted his Memorandum and Recommendation on the motions for summary judgment, and both Pittman-Bey and Defendants timely filed objections. The Court agrees with most of the magistrate judge's recommendations. Pittman-Bey's claims for injunctive and declaratory relief are moot now that the TDCJ has implemented a formal policy change under which Pittman-Bey received Ramadan meals in 2012 and may continue to receive those meals in the future. Docket Entry No. 54 at 10–12. Summary judgment is appropriate on his equal protection claim because he has not presented any evidence that Defendants acted with discriminatory intent in denying him the special Ramadan meals between 2009 and 2011. *Id.* at 12–14. His claims for damages for his alleged emotional injuries are barred by the Prison Litigation Reform Act because he has alleged, at most, a *de minimis* physical injury. *Id.* at 15–16. And his claims for damages under the Religious Land Use and Institutionalized Persons Act are barred because that statute does

not create a cause of action against Defendants in their individual capacity, while Eleventh Amendment immunity bars any claims he may have against Defendants in their official capacity. *Id.* at 16–17.

The Court, however, reaches a different conclusion with regard to Pittman-Bey's First Amendment claim seeking damages from the prison officials. The magistrate court concluded that a fact issue existed on the underlying constitutional claim and also rejected Defendants' qualified immunity defense. For the reasons discussed below, and without having to decide the First Amendment issue, the Court concludes that qualified immunity protects Defendants from Pittman-Bey's claim for damages.

### III. THE FIRST AMENDMENT CLAIM

#### A. Standards of Review

Pittman-Bey alleges that Defendants violated his First Amendment right to free exercise of religion when they denied him the special after-sunset meals during Ramadan. Specifically, he argues that Defendant Casey Celum, the Stevenson Unit Chaplain, and Defendant Omar Shakir, the Regional Muslim Chaplain, did not grant him an exception to the Jumu'ah attendance requirement even though the previous Unit Chaplain had done so. *See* Docket Entry No. 2 ¶¶ 16–17. Defendants argue in response that summary judgment is appropriate because they acted reasonably in

enforcing the Jumu'ah attendance policy, and, even if Pittman-Bey has raised a fact issue on his constitutional claim, they are entitled to qualified immunity.

Although inmates retain their First Amendment right to free exercise, a prison regulation that impinges on an inmate's rights is nonetheless valid "if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). "The pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords inmates opportunities to exercise their faith." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 861 (5th Cir. 2004). Nonetheless, even if Defendants' actions did violate Pittman-Bey's rights and were not reasonably related to a legitimate penological interest, summary judgment is appropriate if Defendants are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). An official's acts violate clearly established law if "at the time of the challenged

conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (internal quotation marks and brackets omitted). The burden is on the plaintiff in each case to demonstrate that the defense is inapplicable. *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam). Thus, in each case, the plaintiff must first show that the defendants committed a constitutional violation, and second show that the qualified immunity defense is inapplicable. *Atteberry v. Nocana Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (citations omitted). Following *Pearson*, 555 U.S. at 236, courts have discretion in choosing which prong of the analysis to consider first. In this case, the Court concludes that it is more appropriate to first evaluate whether Defendants are entitled to qualified immunity. This is the easier prong to answer and addressing it first avoids ruling on a constitutional issue. *See Reichle v. Howard*, 132 S. Ct. 2088, 2093 (2012) (citation omitted) (noting that the discretion allowed by *Pearson* "comports with our usual reluctance to decide constitutional questions unnecessarily").

The Supreme Court has counseled the lower courts that "clearly established law" should not be defined "at a high level of generality." *Al-Kidd*, 131 S. Ct. at 2084 (citation omitted). An issue does "not require a

case directly on point" to be clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 2083. In the absence of controlling authority, an issue should only be considered clearly established if it is supported by a "robust consensus of cases of persuasive authority." *Id.* at 2084 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)); *see also* Note, Amelia A. Friedman, *Qualified Immunity in the Fifth Circuit: Identifying the "Obvious" Hole in Clearly Established Law*, 90 TEXAS L. REV. 1283, 1302 (2012) (discussing the Supreme Court's decision in *Al-Kidd* and its implications). Courts in the Fifth Circuit may consider case law from other circuits in determining whether a robust consensus of persuasive authority exists. *See McClendon*, 305 F.3d at 329–31; *see also* Friedman, *supra*, at 1289–90 (discussing the Fifth Circuit's use of extracircuit case law in this context and noting that its approach "closely resembles the restrictive practices in the Fourth and Sixth Circuits").

### B. Discussion

Even assuming that Pittman-Bey raises a valid free exercise claim, when Defendants acted it was not clearly established that denying Ramadan meals to Muslim inmates who refused to attend Jumu'ah services on religious grounds violated the First Amendment. Indeed, such a

8

constitutional right is not clearly established today. Controlling precedent establishes that inmates like Pittman-Bey are generally entitled to special meals necessary for them to comply with their religious practices so long as prison officials have no legitimate penological interest in denying them those meals. *See Eason v. Thaler*, 14 F.3d 8, 10 (5th Cir. 1994) ("Prison officials have a constitutional obligation to provide reasonably adequate food and, absent some legitimate penological interest preventing the accommodation of a prisoner's religious restrictions, food which is anathema to an inmate because of his religion is at least arguably inadequate."); *see also Baranowski v. Hart*, 486 F.3d 112, 117–18, 121–22 (5th Cir. 2007) (rejecting court challenge to denial of kosher meals to Jewish inmate because vegetarian and pork-free meal options were available and providing kosher meals would be extremely costly). But the magistrate judge erred in ending the qualified immunity inquiry at this general, albeit limited, right of prisoners to receive religious meals. The general principle that observant Muslim inmates are entitled to Ramadan meals does not necessarily put reasonable prison officials on notice that a Muslim inmate who does not comply with the Jumu'ah attendance policy has a constitutional right to the after-sunset meals. To this day, no controlling precedent holds that inmates are entitled to religious meals when they do not

9

participate in the prison's Muslim Friday prayer services.[2] *See Al-Kidd*, 131 S. Ct. at 2084.

With no controlling authority for Pittman-Bey's situation, the Court turns next to whether the right Pittman-Bey asserts was clearly established by "a robust consensus of persuasive authority." *Al-Kidd*, 131 S. Ct. at 2083 (quotation omitted). Two unpublished Fifth Circuit cases upheld prisoners' right to Ramadan or halal meals, but again only in the general sense and in cases in which prison officials had arbitrarily denied meals to inmates who had received approval to receive the meals pursuant to prison policy. In *Brown v. Groom*, 174 F. App'x 847, 847–49 (5th Cir. 2006) (per curiam), prison officials denied a Muslim inmate access to Ramadan services and meals even though the inmate had a preapproved pass allowing him to attend. The Fifth Circuit, noting that the defendants did not contest the authenticity of the inmate's pass, rejected the qualified immunity defense. *Id.* Similarly, in *Gonzalez v. Corrections Corp. of Am.*, 344 F. App'x 984,

---

[2] Recent court of appeals decisions holding that qualified immunity defeated prisoners' claims concerning other religious practices despite a free exercise right that was clearly established at the general level reinforce the degree of factual specificity required to put reasonable prison officials on notice. *See, e.g.*, *Sisney v. Reisch*, 674 F.3d 839, 846–47 (8th Cir. 2012) (holding that case law establishing the right of inmates to reasonable accommodations for religious dietary needs did not clearly establish a Jewish inmate's right to eat his meals in a sukkah, a three-sided structure with all or part of the roof open to the sky); *Copeland v. Livingstone*, 464 F. App'x 326, 330 (5th Cir. 2012) (holding that case law establishing the right of inmates to attend religious meetings subject to some restrictions did not clearly establish that banning a disruptive inmate from attending religious meetings for six months was unconstitutional).

985–86 (5th Cir. 2009) (per curiam), the Circuit held that a Muslim inmate stated a claim for a First Amendment violation by alleging that he was repeatedly denied halal-compliant vegetarian or kosher meals even after being placed on a meal-card plan that was supposed to allow him access to such meals.  *Id.*  Neither *Brown* nor *Gonzalez*, which involved suits against prison officials who refused inmates religious meals in violation of prison policy, would give a reasonable prison official "fair warning" that they might violate Pittman-Bey's rights by following a prison policy requiring Jumu'ah attendance as a prerequisite for Ramadan participation.  *Hope v. Pelzer*, 536 U.S. 730, 740 (2002).  And the one district court case addressing the same TDCJ Jumu'ah attendance policy that Pittman-Bey challenges held that the policy did not violate a Hanafi Muslim inmate's First Amendment right to receive religious meals.[3]  *See Ali v. Maness*, No. 9:09-cv-179, Docket Entry No. 71 (E.D. Tex. June 20, 2011); *id.* Docket Entry No. 74 (E.D. Tex. July 14, 2011) (adopting the magistrate judge's report and recommendation).

Decisions from other circuits addressing challenges to similar Jumu'ah attendance policies reached the same result as *Ali* and thus weigh

---

[3] Although *Ali* is not directly on point because the inmate in that case quickly received an exception to the Jumu'ah attendance policy, the court's holding nonetheless works against a finding that Pittman-Bey's right was clearly established when he was denied Ramadan meals in 2011.

against the existence of the free exercise right Pittman-Bey asserts. A federal district court held that denying Ramadan services and meals in accordance with a Pennsylvania prison's Jumu'ah attendance policy did not violate the First Amendment. *See Logan v. Lockett*, No. 07-1759, 2009 WL 799749 (W.D. Penn. Mar. 25, 2009). In *Logan*, an inmate who refused to attend Jumu'ah services because of his "vocal opposition to the manner in which Islam was practiced" by the Muslim inmate community in that particular prison was denied access to evening communal Ramadan meals. *Id.* at *4. The court held that no constitutional violation occurred because the prison officials' "decision not to allow Plaintiff to attend nightly communal meals with a community of Muslims whose beliefs he [did] not share [had] a rational connection with a concern for a neutral government objective." *Id.* at *6 (citing *Turner v. Safley*, 482 U.S. 78 (1987)). Likewise, in *Hall v. Epke*, 408 F. App'x 385 (2d Cir. 2010), the Second Circuit held that an inmate challenging a Jumu'ah attendance policy could not show that the policy was "so remote from the identified penological interests [maintaining security and minimizing unnecessary expenses] as to render the challenged policy arbitrary or irrational." *Id.* at 388. Although neither *Logan* nor *Hall* involved an inmate like Pittman-Bey whose refusal to attend the Friday prayer services was based on his Hanafi beliefs, these

decisions upholding Jumu'ah attendance policies and the lack of any extracircuit authority to the contrary demonstrate the absence of a "robust consensus of persuasive authority" supporting the right on which Pittman-Bey seeks to recover damages.

Because neither binding precedent nor a consensus of persuasive authority make it clear "beyond debate" that Pittman-Bey had a free exercise right to receive the Ramadan meals when he refused to attend weekly Jumu'ah services based on his religious beliefs, Defendants are entitled to qualified immunity. *Al-Kidd*, 131 S. Ct. at 2083.

## IV. CONCLUSION

In accordance with the foregoing discussion, summary judgment on all of Pittman-Bey's claims is appropriate. The magistrate judge's Memorandum and Recommendation on Defendants' and Plaintiff's Motions for Summary Judgment (Docket Entry No. 54) is, excepting subsection IV(3)(c), **ADOPTED**. Defendants Celum and Shakir's Motion for Summary Judgment (Docket Entry No. 52) is **GRANTED** and Plaintiff's Motion for Summary Judgment (Docket Entry No. 47) is **DENIED**.

**SIGNED** this 4th day of March, 2013.

_____
Gregg Costa
United States District Judge